IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:20CV88 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $6,800.00 in U.S. CURRENCY, | : | |
| Defendant. | : | |

**<u>VERIFIED COMPLAINT OF FORFEITURE</u>**

NOW COMES the plaintiff, United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1. This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* ("CSA"), or represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of the CSA.

2. This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or is derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically the exchange of a controlled substance in violation of state and federal law.

3.      The defendant property is $6,800.00 in U.S. Currency, which was seized on June 15, 2019, in Reidsville, North Carolina, and is currently in the custody of the United States Marshals Service.

4.      Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property.   This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6.      Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7.      The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in **Exhibit A**, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 27th day of January, 2020.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney


/s/ Steven N. Baker
Steven N. Baker
Assistant United States Attorney
N.C. Bar No. 36607
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Phone: (336) 333-5351
Email: steve.baker3@usdoj.gov

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

                                                Jerry L. Hacker, Jr.
                                                Task Force Officer
                                                Drug Enforcement Administration

# DECLARATION

I, Jerry L. Hacker, Jr., a Task Force Officer with the Drug Enforcement Administration (DEA), hereby state, pursuant to 28 U.S.C § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I have been a DEA Task Force Officer since 2017, and am currently assigned to the Greensboro Resident Office. I have been a sworn Law Enforcement Officer for approximately 20 years. I am currently an officer for the Reidsville Police Department (RPD) in Reidsville, North Carolina. In my official duty as a DEA Task Force Officer, I investigate criminal and civil violations of the Federal Controlled Substances Act. I have received special training to enforce the laws of the Federal Controlled Substances Act. I have testified in judicial proceedings for violations of laws concerning controlled substances. I have participated in numerous drug trafficking investigations, including investigations that have resulted in felony arrests for criminal violations of the Federal Controlled Substances Act. I have conducted and assisted with numerous narcotics-related investigations that resulted in the seizure of narcotics and related assets. Because of my training and experience, I am familiar with the methods and trends of trafficking in illicit drugs, as well as methods used by narcotics traffickers to conceal the proceeds of their unlawful activities from law enforcement.

2. The facts set forth in this declaration are based on my personal knowledge and experience, information provided by other law enforcement officers who participated in the investigation described below, and records maintained by state and local

GOVERNMENT EXHIBIT A

government agencies. This declaration does not set forth all facts known to me or other law enforcement officers concerning the investigation.

3. This declaration is submitted in support of a Verified Complaint of Forfeiture of $6,800.00 out of $11,040.00 in U.S. currency seized on June 15, 2019, from William Tyrone MOORE.

## Background Investigation

4. Beginning in January 2019, the Rockingham County Sheriff's Office (RCSO) began investigating William Tyrone MOORE for selling large amounts of cocaine and marijuana in Rockingham County.

5. On June 15, 2019, a confidential and reliable source (CS) advised me that William Tyrone MOORE was in possession of ten (10) ounces of cocaine at his residence on Tinderbox Road, Reidsville, North Carolina (the "Residence"). I relayed this information to RCSO Narcotics Detective T. Underwood.

6. On June 15, 2019, Detective Underwood and I prepared, applied for, and received a search warrant for the Residence from a Rockingham County Magistrate Judge.

## Search of the Residence

7. On June 15, 2019, at approximately 5:00 p.m., Detective Underwood, myself, and other RCSO officers (Sergeant J. Tejeda, Detective J. Cheek, Lieutenant E. Hopper, and Deputy L. Thompson) executed the search warrant on the Residence. RPD K9 Officer B. Patterson and K9 Murphy also assisted.

2

8. Upon approach to the Residence, officers knocked and announced their arrival, but no one answered, and the door was locked. Sergeant Tejeda made forced entry. Officers located Notosha Graves MOORE, the wife of William Tyrone MOORE, asleep in the master bedroom asleep. No one else was in the Residence.

9. Officers secured the Residence, and Sergeant Tejeda escorted Notosha Graves MOORE to the back porch area while Officer Patterson and K9 Murphy conducted a canine sniff inside the Residence. Upon entry of the Residence, Officer Patterson had smelled a strong odor of marijuana in the living room and kitchen. K9 Murphy alerted to an ashtray near the kitchen and living room, which contained a "joint." K9 Murphy also alerted to areas in the master bedroom: the area between the bed and an air vent on the floor and, on the other side of the bed, the area between the bed and a recliner chair. In the basement area, K9 Murphy alerted on a cabinet.

10. Detective Underwood, Detective Cheek, and Deputy Thompson were outside the Residence and noticed a vehicle slow down as if to turn into the driveway of the Residence. The driver proceeded to the dead-end of the neighborhood and then returned to drive past the Residence again. Detective Underwood believed the driver of the vehicle was William Tyrone MOORE. Detective Check, Deputy Thompson, and Lieutenant Hopper left the Residence to search for William Tyrone MOORE. A vehicle stop was conducted and William Tyrone MOORE's identity was confirmed as the driver of the vehicle. William Tyrone MOORE was detained and brought to the Residence.

11. Sergeant Tejeda had William Tyrone MOORE and Notosha Graves MOORE outside together on the back porch when William Tyrone MOORE asked why

3

his wife, Notosha Graves MOORE, was in handcuffs. William Tyrone MOORE advised that his wife had nothing to do with "the stuff" he had in the Residence. William Tyrone MOORE advised he had some marijuana in the house and would show Sergeant Tejeda. William Tyrone MOORE proceeded to pull out a small plastic bag containing marijuana from his right pants pocket. Sergeant Tejeda took possession of the marijuana and eventually turned it over to Detective Underwood.

12. Sergeant Tejeda informed Detective Underwood that William Tyrone MOORE would show him the location of drugs he had stored inside the Residence. William Tyrone MOORE said, "Hacker, I'll show you where it is – don't tear up my kids room." I told William Tyrone MOORE "sure come in and show us if you want." William Tyrone MOORE lead Detective Underwood and me to the kitchen, and said to open the cabinet. I opened the cabinet and William Tyrone MOORE said, "There it is, that's all of it." I said, "okay that's fine, thank you," and William Tyrone MOORE said, "no look at it – it's marijuana and cocaine about five (5) ounces." The cocaine and marijuana were secured in Detective Underwood's vehicle.

13. Detective Underwood also located a digital scale in the kitchen.

14. William Tyrone MOORE was taken back outside with Sergeant Tejeda. Notosha Graves MOORE asked William Tyrone MOORE what he showed the detectives. William Tyrone MOORE stated he showed them the dope. Notosha Graves MOORE asked if it was cocaine, and William Tyrone MOORE responded that it was.

15. Detective Underwood advised the search team that K9 Murphy had alerted on the kitchen, living room, master bedroom, and the basement.

4

16. Detective Underwood and I were alerted to the master bedroom where Deputy Thompson was holding up the mattress. I saw an undetermined amount of U.S. currency located between the mattress and box spring. The U.S. currency was located on the side of the bed where William Tyrone MOORE's personal effects were located, and on the opposite side of where Notosha Graves MOORE was sleeping when officers entered the Residence. The U.S. currency was collected from under the mattress and secured in Detective Underwood's vehicle.

17. I advised Sergeant Tejeda that a large amount of U.S. currency was located under the mattress. Notosha Graves MOORE asked how much cash had been found, and I advised her that I did not know. She then asked William Tyrone MOORE how much it was; William Tyrone MOORE told her not to worry about it because it wasn't their money. Notosha Graves MOORE asked whose money it was, and William Tyrone MOORE told her not to worry about it. William Tyrone MOORE stated that he did not want any money on his head because he was "dealing with some Mexicans."

18. The following items of property were located and seized from the Residence:

    a. small bag of marijuana in William Tyrone MOORE's pocket;

    b. 2.3 ounces of marijuana;

    c. 6.7 ounces of cocaine;

    d. a "joint" of marijuana from the ash tray;

    e. a digital scale;

    g. $11,040.00 in U.S. currency.

5

Case 1:20-cv-00088   Document 1-1   Filed 01/27/20   Page 5 of 9

### K-9 Officer Patterson's and K-9 Murphy's Training and Experience

19. K-9 Officer Patterson has been a sworn law enforcement office with RPD for 13 years. Officer Patterson completed RCC's Basic Law Enforcement Training (BLET) in December 2006. In addition to BLET, Officer Patterson has attended Basic Narcotics Investigators course, Drug Narcotics Investigations, Basic Swat, PLI, K-9 Case Law, and numerous other seminars. Officer Patterson has completed over 300 hours of training and has served RPD as a Patrol Officer, Police Training Officer, K-9 Officer, and as a Narcotics detective. Officer Patterson has conducted and assisted in numerous narcotics investigations leading to the arrest and conviction of narcotics traffickers in state and federal criminal cases.

20. In 2016, Officer Patterson was selected to be a Narcotics Detection Dog Handler and assigned to handle K-9 Murphy.

21. K-9 Murphy is a four-year-old Belgian Malinois, a breed specifically selected for its keen senses and ability to be trained to detect the odor of controlled substances.

22. In May 2019, K-9 Murphy and Officer Patterson underwent 120 hours of basic canine detection training with Highpoint Canine Solutions. During his training, K-9 Murphy proved that he could reliably use his olfactory senses to locate narcotics training aids of actual controlled substances, including heroin, cocaine, crack cocaine, marijuana, hashish, methamphetamine, and ecstasy.

23. K-9 Officer Patterson and K-9 Murphy were certified as a Canine Narcotics Detection Team by Eastern States Working Dog Association on May 31, 2016, in the

detection of marijuana, cocaine, heroin, and methamphetamine, and then recertified on November 20, 2019, with Highland Canine Training LLC. This certification is valid for 12 months from the date of issuance.

24. K-9 Murphy is trained to passively alert after detecting the odor of narcotics for which he has been trained. This passive alert consists of a physical reaction that ends in him coming to a sitting position and/or alternating looks between K-9 Officer Patterson and the point of narcotics for which he is trained to detect. K-9 Murphy also exhibits various mental and physical reactions that are noticeable to K-9 Officer Patterson. These include becoming possessive of the area, refusing to leave an area where the odor of narcotics is detected, and changing his breathing rate and sniffing patterns.

25. Officer Patterson has demonstrated the ability to properly deploy and maintain a police narcotics canine and effectively locate controlled substances concealed in locations such as, but not limited to, sealed packages, residential homes and outbuildings, automobiles, tractor trailers, luggage, electrical components/appliances, and the ground during training. From May 2016 to the present, the detection team of Officer Patterson and K-9 Murphy has located and seized no less than 1,276.03 grams of marijuana, 56 grams of methamphetamine, 412.55 grams of cocaine, and 127 grams of heroin. K-9 Murphy has also successfully alerted to no less than $55,303.00 in U.S. currency, as of Canine Usage Reports dated January 08, 2020.

**Transportation of the Seized Currency**

26. All contraband and U.S. currency seized from the Residence was taken to the RCSO. I contacted DEA SA David Webster to inform him of the seized U.S. currency.

27. SA Webster and I then transported the currency to the DEA Greensboro Office and secured it in a high value vault.

28. SA Webster and I later transported the currency to Loomis in Durham, North Carolina. The funds were then electronically transferred to the United States Marshals Service and placed in the Seized Asset Deposit Fund.

**William Tyrone MOORE's Charges, Conviction, and Previous Criminal History**

29. On July 18, 2019, William Tyrone MOORE was convicted on state charges stemming from the search and seizures described above: trafficking schedule II substance, possessing a schedule VI substance with intent to sell, and maintaining a dwelling for a controlled substance. He was sentenced to a term of incarceration of fifty one (51) months and is currently incarcerated in the Davidson County Correctional Center.

30. William Tyrone MOORE has a history of numerous drug related arrests, charges, and convictions in North Carolina beginning in 1998. He was convicted of felony possession of cocaine in 1998, 1999, and 2019; possession of marijuana in 1998, 2001, 2002, 2011, and 2015; possession of drug paraphernalia in 2012 and 2016; and cocaine trafficking in 2018 and 2019.

**Forfeiture Proceedings**

31. DEA adopted the seizure of the $11,040.00 in U.S. currency and began administrative forfeiture proceedings. On September 30, 2019, DEA received a claim filed by Notosha Graves MOORE who claimed ownership of $6,800.00 out of the $11,040.00. As a result, the administrative forfeiture process for the claimed $6,800.00 was terminated and the seizure of the $6,800.00 was referred to the United States Attorney's Office for judicial forfeiture. Administrative forfeiture proceedings are ongoing as to the remaining $4,240.00 in U.S. currency.

## **CONCLUSION**

32. Based on the facts and circumstances related above, declarant maintains that there is probable cause to believe that the $6,800.00 out of $11,040.00 in U.S. currency seized from the residence of William Tyrone MOORE and Notosha Graves MOORE on June 15, 2019, and now claimed by Notosha Graves MOORE, was furnished or intended to be furnished in exchange for a controlled substance or represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substance Act, and is therefore subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

This 22th day of January, 2020.

_____
Jerry L. Hacker, Jr.
Task Force Officer
Drug Enforcement Administration